**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 0:12-cv-60089-JIC

BRANDON M. BUSLEPP, an individual, on behalf
of himself and all others similarly situated,

    Plaintiff,

v.

B&B ENTERTAINMENT, LLC,
a Florida limited liability company,
(doing business as "The Playhouse"),

    Defendant.

---

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE ISSUE OF PRIOR EXPRESS CONSENT**

---

Plaintiff, BRANDON M. BUSLEPP, through the undersigned counsel, hereby submits this memorandum of law in support of his motion for summary judgment, or in the alternative, for partial summary judgment as to the issue of "prior express consent."

## I. INTRODUCTION

Brandon Buslepp has a cellular telephone. He has had the same number since 2004. (Buslepp Dep., 20:3-11)  He does not give his number out randomly, and generally avoids disclosing it over the internet. (Buslepp Dep., 18:17-25, 19:1-2) In spite of these precautions, on or about October 26, 2011, Mr. Buslepp began receiving unsolicited text messages from an area strip club called, "The

Playhouse." (Complaint, ¶ 13) The Playhouse is owned and operated by the Defendant, B&B Entertainment, LLC ("B&B"). (Answer, ¶ 4)

In order to boost its business presence, B&B's management team decided to engage in a text message marketing campaign the intent of which was to acquire, through various methods, cellular telephone numbers for the purpose of sending text message "blasts," advertising upcoming specials and events at The Playhouse.

Mr. Buslepp received not less than four (4) such text messages over the course of several months, for example:

> HAUNTED HALLOWEEN OPEN BAR PARTY @ THE PLAYHOUSE WEDNESDAY OCT 26 7-10PM LADIES IN COSTUMES ARE FREE! CALL 954322PLAY 4 INFO Reply X to Stop
>
> Your'e Invited 2 The Playhouse Gentleman's club 2 Year Anniversary Party Wed Nov 16 Open Bar 12pm-3pm & 7-10pm xoxo The Girls Reply X to Stop
>
> THE PLAYHOUSE IS OPEN TONIGHT TIL 6AM WE R OPEN CHRISTMAS DAY NOON TIL 4AM 241 DRINKS TIL 9PM EVERY DAY HAPPY HOLIDAYS Reply X to Stop
>
> WEDNESDAY JAN 18 JOIN THE PLAYHOUSE GENTLEMAN'S CLUB 4 A 2012 OPEN BAR BASH ENJOY OPEN BAR FROM 12-3PM & 7-10PM Reply X to Stop.

In order send its text message "blasts," B&B availed itself of the services of a company called "Texthub.com." (Berger Dep. 17:17-18) Texthub.com is an internet based business, located in Illinois. Texhub.com's business model is fairly simple and straightforward. Customers pay for access to Texthub.com's mass

text messaging equipment and software. In exchange, the customer is allowed to create its own online database of cell phone numbers, enter the content of text messages and "blast messages" to all the phone numbers in the data base with the click of a mouse. The customer actually inputs the data, uploads the message, and using Texthub.com's equipment, blasts out the text message. The only part of the process requiring human intervention is the typing of cellphone numbers into the database, typing the content of the text message and launching the blast. Texthub.com's automatic dialing system, essentially "rented" by the customer, automatically dials all the numbers in the database and sends the messages.

Mr. Buslepp has never visited "The Playhouse." (Buslepp Dep., 10:15-17) To this date Plaintiff has never sought to find out where The Playhouse is located. (Buslepp Dep., 21:4-7)  He never gave his cellular telephone number to The Playhouse or gave his prior express consent to receive text messages from The Playhouse. (Buslepp Aff. 3,5) Yet, somehow, The Playhouse obtained Mr. Buslepp's telephone number, entered it's  text messaging database and began sending unsolicited text messages to his cellular telephone.

It is a violation of 47 U.S.C. § 227, *et seq.,* the Telephone Consumer Protection Act (TCPA) to make any call using an automatic telephone dialing system or an artificial or prerecorded voice to a number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii). Text messages are "calls" under

the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F. 3d 946 (9th Cir. 2009). Moreover, it is a violation of Florida law to utilize automatic dialing systems in the manner in which Defendant has. F.S. § 501.059(7)(a), *infra.*

The Defendant does not deny that it placed text messages to the Plaintiff's cellular telephone. (Berger Dep. 5:9-14) Instead B&B insists that Mr. Buslepp provided his number to B&B and in doing so, gave B&B his "prior express consent" to receive text message advertising. "Prior express consent" is the only affirmative defense to claims for violation of the TCPA (aside from calls made for "emergency purposes," not applicable to the instant action). *Connelly v. Hilton Grant Vacations Company, LLC,* Case No. 12CV599 JLS (KSC) (S.D. Cal., June 11, 2012) (Whether Plaintiffs gave the required prior express consent is an affirmative defense to be raised and proved by a TCPA defendant, however, and is not an element of Plaintiffs' TCPA claim).

Mr. Buslepp adamantly denies that he provided "prior express consent" to receive unsolicited text messages from Defendant. (Buslepp Aff. 5) He has no idea how B&B came into possession of his telephone number. B&B, in support of its "prior express consent" defense has produced no evidence that Mr. Buslepp provided his number, stating only that they could not have obtained the number unless he gave it to them.

### III. ARGUMENT

**A. Legal Standards**

***1. Summary Judgment***

Under Fed. R. Civ. P. 56(a), summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. at 248.

In opposing a summary judgment motion, the "non-moving party must do more than present a mere "scintilla" of evidence in his favor. Rather, the nonmoving party must present sufficient evidence such that "reasonable jurors could find by a preponderance of the evidence for the non-movant." *Sylvia Dev. Corp. v. Calvert County Md.,* 48 F. 3d 810, 818 (4th Cir. 1995) (quoting *Anderson*, 477 U.S. at 249-50).

An apparent dispute is "genuine" only if the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find in its favor. Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment must be granted." *Anderson*, 477 U.S. at 249. *Griffith v. Bird*, 2009 U.S. Dist. LEXIS 104469 (W.D.N.C. Nov. 3, 2009).

### *2. Telephone Consumer Protection Act (TCPA)*

The TCPA provides, in relevant part:

(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

> (A) To make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

. . .

> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

Under § 227(b)(3), a person or entity may bring an action to recovery actual monetary loss for a violation of the above prohibition, to receive $500 in statutory damages for each violation (which may be tripled in the event of a willful or knowing violation). *Id.* at §227(b)(3). "The TCPA is essentially a strict liability statute" that "does not require any intent for liability except when awarding treble damages." *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (quoting *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008)).

The TCPA gives the Federal Communications Commission ("FCC") the authority to prescribe regulations and implement the TCPA's provisions. 47

U.S.C. § 227(b)(2). On January 4, 2008, the FCC adopted Declaratory Ruling 07-232, which stated:

> [A]utodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party [and] such calls are permissible. We conclude that the provision of a phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.

*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 23 FCC Rcd. 559, 564 (F.C.C. 2008) (hereinafter FCC Ruling 07-232). The FCC qualified this exemption for debt collection calls as calls made with "prior express consent" by emphasizing that consent is deemed to be granted only if the cellular number called: (1) was provided by the consumer to the creditor; and (2) was provided during the transaction that resulted in the debt owed. *Id.* at 564–65. Moreover, as further protection for consumers, "the *creditor* should be responsible for demonstrating that the consumer provided prior express consent." *Id.* at 565. Thus, the prior express consent exemption acts as an affirmative defense, and "the burden will be on the creditor to show it obtained the necessary prior express consent." *Id.*

In summary, to demonstrate a violation of the TCPA, the Plaintiff need only show that Defendant called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice. *Breslow v. Wells Fargo Bank, N.A.,* No. 11-22681-CIV (S.D. Fla. April 26, 2012) (Scola, J.). *See*

*also Cavero v. Franklin Collection Serv., Inc.*, No. 11-22630-CIV, 2012 WL 279448, at *2 (S.D. Fla. Jan. 31, 2012) (Altonaga, J.).

### B. Florida law prohibits the use of automatic telephone dialing systems for purposes of telephonic marketing.

Under F.S. § 501.059(7)(a), no person shall make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called.

### 1. Florida Statutes and the TCPA are intended to be applied in conjunction with each other.

Courts in this Circuit have held that consumer protection statutes should be read together wherein they serve congruent purposes. See generally, *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1190, 1192 (11th Cir. 2010) (holding that a violation of the FCCPA may support a cause of action to a violation of the FDCPA); *Clark v. Weltman, Weinberg & Reis, Co.*, L.P.A., 2010 WL 2803975, at *2 (S.D. Fla. July 15, 2010) (stating that allegations which support a cause of action under the TCPA may also support a violation of the FDCPA).

F.S. § 501.059(7)(a) is not preempted by the TCPA. *TSA Stores v. Department of Agriculture*, 957 So. 2d 25, 27 (Fla. 5th DCA 2007). At least one other court has addressed the issue in similar fashion.

> *A Court determines whether to give an agency's interpretation of a statute deference by employing the two-step Chevron analysis.* Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2009) (citing Chevron, USA, Inc. v. Nat. Res. Def.

> *Council, Inc., 467 U.S. 837 (1984)). Under this rubric, the Court must first determine whether the intent of Congress is clear, and to give effect to the unambiguously expressed intent of Congress. Second, if the statute is silent or ambiguous, the Court is to defer to the agency's permissible construction of the statute. Id.*
>
> *The Court gives no deference to the FCC's position because there is no ambiguity in the language of the TCPA's savings clause. Congress has expressly allowed states to prohibit interstate use of automatic dialing machines.*

*Meilleur v. AT&T, Inc.*, Case No. C 11-1025 MJP (W.D. Wash., November 16, 2011).

47 U.S.C. § 227(e)(1) is entitled "State law not preempted," and reads as follows:

> Except for the standards prescribed under subsection (d) of this section and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits —
>
> (A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements;
>
> (B) the use of automatic telephone dialing systems;
>
> (C) the use of artificial or prerecorded voice messages; or
>
> (D) the making of telephone solicitations.

Congress has expressly allowed states to prohibit interstate use of automatic dialing machines. *Palmer v. Sprint Nextel Corp.*, 674 F. Supp. 2d 1224, 1231 (W.D. Wash. 2009). This history suggests that Congress intended both to "fill the gaps" in state regulation and to give consumers the right to file TCPA actions in state court. The TCPA, and its private right of action, were thus

9

designed to put "teeth" into state regulation, rather than to establish a distinctly federal policy. Essentially, Congress "sought to put the TCPA on the same footing as state law ..., supplementing state law where there were perceived jurisdictional gaps." *Gottlieb v. Carnival Corp.*, 436 F.3d 335, 342 (2d Cir.2006).

**2. Plaintiff cannot "legally" consent to receipt of unlawfully sent text messages.**

Defendant's "prior express consent" defense cannot withstand Florida's prohibition against the use of automatic dialing systems. It is simply illegal to use them in the manner in which Defendant has. Assume, *arguendo,* that Defendant *did* have consent (which it did not). It matters not. Mr. Buslepp cannot give the Defendant permission to violate the law. <u>Any "consent" which B&B may believe it has is necessarily vitiated by Florida's prohibition against the use of automatic dialing systems</u>.

Even if Defendant were to argue that it had some sort of contractual arrangement with Mr. Buslepp, its position does not improve. Florida courts have consistently held that illegal contracts are void and unenforceable. *Local No. 234 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of United States & Canada v. Henley & Beckwith, Inc.*, 66 So.2d 818, 823 (Fla.1953) ("Agreements in violation of public policy are void because they have no legal sanction and establish no legitimate bond between the parties."); *Amoco*

*Drainage & Metal Prods., Inc. v. Pinellas Cnty.*, 137 So.2d 234, 238 (Fla.Dist.Ct.App.1962) ("courts set aside or refuse to enforce illegal contracts, in general, not from any regard for the objecting party, nor from a desire to protect his individual interests, but from reasons of public policy"); *see also Hoffman v. Boyd*, 698 So.2d 346, 349 (Fla.Dist.Ct.App.1997) (holding that illegal contract to marry was void and unenforceable). A "defendant may assert the invalidity of the contract even though he is a participator in the wrong." *Local No. 234*, 66 So.2d at 823. "This is so for the reason that one who has entered into a contract or undertaking which is violative of public policy owes to the public the continuing duty of withdrawing from such an agreement." *Id*.

Here, Defendant, using an "automatic dialing machine" in Illinois, to place unsolicited text message "calls" into the State of Florida. Such use of automatic dialing systems violates Florida law. Even if Mr. Buslepp wanted to give consent to the receipt of the calls, he lacks the legal authority to do so. Thus, there can be no consent, under any circumstances. Defendant, when applying Florida law in conjunction with the TCPA, has no defense to its use of automatic dialing systems to place text messaging calls to consumers, like Plaintiff.

Plaintiff is entitled to summary judgment as a matter of law.

**C. Defendant's Mass Text Messaging System is an Automatic Telephone Dialing System (ATDS) pursuant to the TCPA.**

Almost ten years ago the Federal Communications Commission (FCC) explicitly stated that the TCPA's prohibition on automatic telephone dialing

systems "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls ..." In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 18 F.C.C.R. 14014, 14115 (July 3, 2003).  In 2009, the Ninth Circuit held unambiguously that a text message is a "call" for purposes of the TCPA.  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

Since that time, several class action lawsuits have been certified by various federal courts, including the Southern District of Florida.  *See Espinal v. Burger King Corp.*, Case No. 1:09-cv-20982, DE-xx (S.D. Fla. 2010) see also, *Lozano v. Twentieth Century Fox Film Corp.*, Case No. 1:09-cv-06344, DE-xx (N.D. Ill. 2010); *Kramer v. Autobytel, Inc.*, Case No. 4:10-cv-02722, DE-xx (N.D. Cal. 2011); and *Schrock v. Wenner Media, LLC*, Case No. 1:10-cv-07230, DE-xx (N.D. Ill. 2011).

In 2002, the FCC sought comments concerning "whether Congress intended the definition of 'automatic telephone dialing system' to be broad enough to include any equipment that dials numbers automatically, either by producing 10–digit telephone numbers arbitrarily or generating them from a database of existing telephone numbers. "**Specifically, we ask whether a predictive dialer that dials telephone numbers using a computer database of numbers falls under the TCPA's restrictions on the use of autodialers**." Id. at 17475. Several companies argued that predictive dialers fell outside the

TCPA's scope because a list or database of actual customer telephone numbers is, by definition, not randomly or sequentially generated. See, e.g., Comments of the American Teleservices Ass'n, attached as Ex. C to Stone Decl., at 113 ("Predictive dialers do not generate 'random' or 'sequential' telephone numbers. Instead, they rely on telephone numbers from lists provided by the equipment operator. These lists are anything but 'random' or 'sequential.' "). The thrust of these comments was that Congress, in enacting the TCPA, intended to regulate an especially vexatious type of autodialing, not autodialing generally. ( See, e.g., Comments of Mastercard Int'l Inc.)

The FCC effectively rejected these comments, concluding that "a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd 14014, 14093 (July 3, 2003). The technology had changed, but the basic function of such equipment—"the capacity to dial numbers without human intervention"—had not. Id. at 14092 (emphasis in original). The FCC went on to conclude that:

> To exclude from [the restrictions on automated and prerecorded calls] equipment that use [sic] predictive dialing software from the definition of "automated telephone dialing equipment" simply because it relies on a given set of numbers would lead to an unintended result. Calls to emergency numbers, health care facilities, and wireless numbers would be permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates

> independently of such lists and software packages. We believe the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented.
>
> Id. at 14092–93. In 2008, in response to a request for clarification, the FCC "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd 559, 566 (Jan. 4, 2008). The petitioner requesting clarification argued that "a predictive dialer meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists." Id. The FCC rejected this interpretation, citing the policy considerations that guided its 2003 ruling. Id. at 566–67.

A description of the functionality of Defendant's text messaging equipment clearly reveals that it falls squarely within the equipment described above. The FCC ruling must be followed. The Administrative Orders Review Act, better known as the Hobbs Act, reserves to the courts of appeals the power "to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" all final FCC orders, see 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a), and that before seeking relief from an appellate court, a party aggrieved by the FCC's final order must petition the FCC for reconsideration, see 47 U.S.C. § 405(a). *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F. 3d 443 (7th Cir. 2010).

In the words of Defendant's own corporate representative, Greg Berger, the individual in charge of B&B's text messaging campaign (Berger Dep. 5:6-8), would, "for a very nominal amount" be granted access by Texthub.com to type

phone numbers into a database. (Berger Dep. 7:1) He would then hit "send" to upload the list to the B&B database, stored on the Texthub.com server. Mr. Berger himself, uploaded his own phone number into the database and received text messages. (Berger Dep. 12:11-15). Each time Mr. Berger logged on to his account on the Texthub.com website and entered a new text message, hundreds of recipients would automatically be sent a text message, simply by hitting "send." (Berger Dep. 13:10-25) The system utilized by B&B to simultaneously deliver hundreds of text messages at the click of a mouse is the quintessential example of an automatic telephone dialing system.

### D. **B&B Entertainment did not have prior express consent to send unsolicited text messages to Plaintiff's cellular telephone.**

Whether Plaintiff gave the required prior express consent is an affirmative defense which *must be raised and proved by a TCPA defendant*. It is not an element of Plaintiffs' TCPA claim. *Connelly v. Hilton Grant Vacations Co., LLC*, No. 12CV599 JLS (KSC) (S.D. Cal., June 11, 2012). Plaintiff need not prove he did not consent to receipt of the text messages. It is up to the Defendant to prove consent. Because Defendant has made "express consent" the cornerstone of its opposition, even though it failed to allege "prior express consent" as an affirmative defense in its answer, Plaintiff addresses it for the purpose of foreclosing this one and only defense available to Defendant.

Prior express consent is deemed to be granted only if the cellular number called: (1) was provided by the consumer to the creditor; and (2) was provided

during the transaction that resulted in the debt owed. *Leckler v. Cashcall, Inc.*, 554 F. Supp. 2d 1025 (N.D. Cal. 2008). This case does not involve a consumer transaction, however the basic premise of *Cashcall* applies nonetheless. Prior express consent should be deemed granted if the Defendant can show that Plaintiff provided his cellular telephone number to the Defendant for the purpose of receiving text message advertising from the Defendant, and more, that Plaintiff consented to Defendant's use of an automatic telephone dialing system (ATDS). The record evidence conclusively establishes that no such "consent" was ever given.

Mr. Buslepp is the owner and sole possessor of a certain cellular telephone. (Buslepp Aff. 2) The number has belonged to him since 2004 and no one but him has access to the phone. (Buslepp Dep. 11:2-7, Buslepp Aff. 2) Plaintiff has never disclosed his cellular telephone to online auction sites, contest sites, or the like. (Buslepp Dep. 18:17-25, 19:1-2) He has never provided his cell number to the Defendant. (Buslepp Aff. 3)

Not only has Mr. Buslepp never provided his cell number to the Defendant, he has never visited the Defendant's establishment. (Buslepp Aff. 3) Because he has never given Defendant his cell phone number, it follows then, that Mr. Buslepp could never have given the Defendant permission to send text messages to his cell phone. (Buslepp Aff. 5)

Defendant, on the other hand, argues that Mr. Buslepp had to have given his cell phone number to Defendant during a visit to The Playhouse; there was no other way of obtaining it. But, that is not the truth. In his deposition, Defendant's corporate representative, Greg Berger, testified under oath, "there's no other way to get his phone number," other than directly from Mr. Buslepp while he was in the club. (Berger Dep., 15:9-13). He later states in that same deposition that Defendant never obtains phone numbers other than directly from customers. (Berger Dep. 22:24-25, 23:1) The same Mr. Berger, in the Defendant's verified response to Plaintiff's Interrogatories, indicated that the Defendant not only obtains telephone numbers from persons who visit the club, but also from Facebook and possibly even from someone other than the Plaintiff, who, for whatever reason, provided Plaintiff's telephone number to the club. (Def. Resp. Int., *passim*) The fact is, Defendant simply cannot or will not say how it came into possession of Plaintiff's phone number. There is certainly no evidence that Defendant obtained Plaintiff's number directly from the Plaintiff himself.

By Defendant's own admission, they do not keep records of forms containing numbers entered into the text message database. (Material Facts, # 7) The forms, to the extent they even exist in the first place, are destroyed after the number is entered in the text message database. (Material Facts, #8) By Defendant's own admission, they do not bother to check the accuracy of telephone numbers they acquire, i.e., verify ownership, even though the alleged

forms ask for the cellphone owners' name. (Berger Dep. 15:22-25) The Defendant does not cross-check the numbers it receives with any Do-Not-Call Registry (Berger Dep. 9:2-4). The Defendant has no policy or procedure in place to avoid violations of the TCPA. (Berger Dep. 13:24-25, 14:1-10)

The burden of showing prior express consent rests entirely upon the Defendant. FCC Ruling 07-232, at 565. In this case, there is no evidence whatsoever in the record constituting anything resembling sufficient evidence such that "reasonable jurors could find by a preponderance of the evidence for the non-movant." *Anderson*, 477 U.S. at 249-50.

## IV. CONCLUSION

Based upon the foregoing, there is no genuine issue of material fact remaining as to the issue of whether Defendant violated the TCPA by placing unsolicited automatically dialed text message calls to his cellular telephone. Plaintiff never gave his "prior express consent" to receive unsolicited text messages to his cellular telephone. As a consequence, Plaintiff is entitled to summary judgment as a matter of law, or in the alternative, partial summary judgment as to the issue of "prior express consent."

Dated: August 24, 2012

                                                Respectfully submitted,

/s/ Scott D. Owens
**SCOTT D. OWENS, ESQ.**
Florida Bar No.: 0597651
*Attorney for Plaintiff*
664 E. Hallandale Beach Blvd.
Hallandale, Florida 33009
Phone: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 24, 2012, I electronically filed the foregoing document(s) with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties, if any, who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

/s/ Scott D. Owens
**SCOTT D. OWENS, ESQ.**